# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### AT KNOXVILLE

BANK OF AMERICA,         )
         )
     Appellant,       )
         )
v.               )    No.:  3:11-CV-231
         )           (VARLAN/GUYTON)
RICHARD TRAVIS GREENE, *et al.*,  )
         )
     Appellees.       )
_____)
         )
BANK OF AMERICA,         )
         )
     Appellant,       )
         )
v.               )    No.:  3:11-CV-376
         )           (VARLAN/GUYTON)
RICHARD TRAVIS GREENE, *et al.*,  )
         )
     Appellees.       )

## <u>MEMORANDUM OPINION</u>

Appellant Bank of America ("Bank of America") has appealed [Doc. 8] the Memorandum and Judgment (the "Judgment") [Doc. 1-35; Doc. 1-36] of the United States Bankruptcy Court for the Eastern District of Tennessee (the "Bankruptcy Court") in favor of Richard and Deana Greene and Trustee, John P. Newton, Jr. (the "Trustee"). Appellee, the Trustee, has submitted a response in opposition to that appeal [Doc. 12]. Bank of America has filed a reply [Doc. 13] to that response.

The Court has carefully reviewed the parties' briefs in light of the entire record and the controlling law. For the reasons set forth below, the decision of the Bankruptcy Court will be affirmed and Bank of America's appeals will be dismissed.

## I.     Relevant Facts and Procedural History[1]

In February 2009, Richard and Deana Greene (the "debtors") executed a deed of trust (the "DOT") in favor of Homeowners Mortgage of America, Inc. ("Homeowners Mortgage"), covering real property located at 825 Garners Landing Boulevard, Seymour, Tennessee (the "Property") [Doc. 1-35, p. 2]. On March 11, 2009, Homeowners Mortgage submitted the DOT via electronic filing to the Sevier County Register of Deeds (the "Register") [*Id.*, pp. 2, 7 n.6; Doc. 1-22, ¶ 4]. The Register accepts instruments for registration via electronic filing through Business Information Systems ("BIS"), an electronic recording vendor [Doc. 1-35, p. 6; Doc. 1-22, ¶ 4]. The Register maintains a documents log which lists all instruments received for registration [Doc. 1-35, p. 6; Doc. 1-22, ¶ 5]. The documents log indicates the instrument numbers assigned to instruments upon receipt and the address to which a copy of the received instrument is to be returned after registration [Doc. 1-35, p. 7 n.6; Doc. 1-22, ¶ 5]. The return address in the documents log for instruments delivered by BIS is typically listed as "Ingeo" or "Simplifile" [Doc. 1-35, p. 7 n.6; Doc. 1-22, ¶ 5].

---

[1]As noted by the Bankruptcy Court, these facts are "not in dispute or have not been rebutted." [Doc. 1-35, p. 5].

On March 11, 2009, the Register received an electronic copy of the DOT from Homeowners Mortgage [Doc. 1-35, pp. 6-7]. The Register accepted the DOT for registration, assigned it instrument number 09015404, and listed the instrument number and the return address of Simplifile in the documents log [*Id.*]. Lois McCurry ("McCurry"), chief deputy of the Register, assigned the DOT book number 3300 and page number 584-594 [*Id.*, p. 7]. A copy of the recorded DOT, including the assigned instrument, book, and page numbers, was transmitted to Network Closing Services, Inc. ("NCS"), the closing agent for the debtors' loan [*Id.*, pp. 7 n.6, 12].

McCurry then voided the DOT because it was labeled as a "miscellaneous document" and because the mortgage tax had not been received [*Id.*, p. 12]. McCurry then accepted a subsequently filed, unrelated instrument, which was listed as instrument number 09015405 in the documents log, and assigned that instrument the identical book and page numbers previously assigned to the DOT [*Id.*, pp. 12-13]. Neither the debtors or NCS received any information or indication that the DOT had been voided until December 15, 2009 [Doc. 1-32, ¶ 11].

In the meantime, on June 17, 2009, the debtors filed a Chapter 7 Voluntary Petition of bankruptcy (the "Chapter 7 petition"), and the Trustee was appointed to serve as trustee of the debtors' bankruptcy estate [Doc. 1-35, p. 5]. In the Chapter 7 petition, the debtors listed the Property on the schedule and list of real property which, pursuant to 11 U.S.C. § 541, became part of the bankruptcy estate [*Id.*]. The Chapter 7 petition also indicated that

3

the debtors had signed the DOT to secure a promissory note entered into in February 2009, and that Bank of America was the secured creditor [Doc. 1-1].

The Trustee reviewed the Chapter 7 petition, including the accompanying schedules, and investigated the Property listed on the schedules, along with Bank of America's purported interest as the secured creditor [Doc. 1-35, pp. 5-6]. From the Trustee's investigation and review of the applicable property records, the Trustee found no recorded deeds of trust encumbering the Property and therefore requested that Bank of America file a proof of claim with documentation establishing its security interest over the Property [*Id.*, p. 5]. On March 18, 2010, Bank of America filed a proof of claim against the debtors based on the DOT in the amount of $203,938.18 [*Id.*, p. 6]. Attached to the proof of claim was a copy of the electronically filed DOT containing the Register's stamp, dated March 11, 2009, and reflecting that the DOT was, on that date, accepted by the Register, assigned instrument number 09015404, and assigned book number 3300 and page numbers 584-594 [*Id.*].

On May 4, 2010, the Trustee initiated an adversary proceeding by filing a complaint against Bank of America and seeking to avoid, pursuant to 11 U.S.C. § 544, Bank of America's lien on the Property, along with a determination that the Property is free and clear of liens [*Id.*, p. 7]. Bank of America moved for summary judgment and the Trustee responded in opposition [*Id.*]. After Bank of America filed the motion for summary judgment, the Bankruptcy Court advised the parties that it may grant summary judgment for the nonmoving Trustee independent of Bank of America's motion [*Id.*, p. 4]. On March 11, 2011, after additional briefing, including the submission of supporting exhibits and

4

documents, along with oral argument, the Bankruptcy Court entered the Judgment in favor of the Trustee, denied Bank of America's motion for summary judgment, and ordered that the Property could be sold free and clear of Bank of America's lien [*Id.*, pp. 4-5, 19-20; Doc. 1-36].

Bank of America filed a notice of appeal of the Judgment to this Court, docketed as Case No. 3:11-CV-231. That appeal raises four issues [Doc. 8, p. 4]. First, based on the undisputed material facts, was the Bankruptcy Court correct in entering summary judgment in favor of the Trustee [*Id.*]. Second, whether Bank of America holds a valid security interest in the Property [*Id.*]. Third, whether the Trustee is entitled to sell the Property free and clear of Bank of America's lien [*Id.*]. Fourth, whether Bank of America is entitled to an order granting relief from the automatic stay in order to enforce its security interest in the Property [*Id.*]. The first and second issues are dispositive of the third and fourth.

After the Bankruptcy Court entered Judgment in favor of the Trustee, Bank of America moved the Bankruptcy Court to stay enforcement of the Judgment and for approval of a supersedeas bond. The Bankruptcy Court denied both motions. The Bankruptcy Court then authorized the sale of the Property free and clear of Bank of America's lien and required the Trustee to retain the proceeds of the sale subject to further order. Bank of America appealed this order to this Court, docketed as Case No. 3:11-CV-376.

Upon docketing of the second appeal, the magistrate judge deemed both appeals related. Bank of America moved to consolidate the two appeals because the actions involve the same transaction or occurrence, the same parties, and the same issues, and because filing

5

additional appeal briefs in the later-filed appeal would be a waste of time and resources. With no submitted opposition by the Trustee, the magistrate judge granted the motion and consolidated the two appeals, with Case No. 3:11-CV-231 being designated the lead case [Doc. 14].

## II.    Standard of Review

A district court reviews the findings of fact of a bankruptcy court for clear error, and the conclusions of law *de novo*. *See In re Behlke*, 358 F.3d 429, 433 (6th Cir. 2004). Federal Rule of Bankruptcy Procedure 8013 provides that "[f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of witnesses." Fed. R. Bankr. P. 8013. Where a bankruptcy court makes a determination on a motion for summary judgment, the bankruptcy court's decision is purely a question of law. Thus, the district court reviews the award of summary judgment *de novo*. *See In re Cannon*, 277 F.3d 838 (6th Cir. 2002*)*; *In re Batie*, 995 F.2d 85, 89 (6th Cir. 1993). "On an appeal the district court . . . may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." Fed. R. Bankr. P. 8013.

Federal Rule Bankruptcy Procedure 7056 makes Federal Rule of Civil Procedure 56 applicable to bankruptcy adversary proceedings. Fed. R. Bankr. P. 7056. Thus, summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The burden is on the moving party to show conclusively that no genuine issue of material fact exists, and the

Court must view the facts and all inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Morris v. Crete Carrier Corp.*, 105 F.3d 279, 280-81 (6th Cir. 1997); *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943 (6th Cir. 1990).

"Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations." *Curtis Through Curtis v. Universal Match Corp.*, 778 F. Supp. 1421, 1423 (E.D. Tenn. 1991) (citing *Celotex Corp v. Catrett*, 477 U.S. 317, 322-23 (1986)). The nonmoving party is required to come forward with some significant probative evidence which makes it necessary to resolve the factual dispute at trial. *White*, 909 F.2d at 943-44. The moving party is entitled to summary judgment if the nonmoving party fails to make a sufficient showing on an essential element of the nonmoving party's case with respect to which the nonmoving party has the burden of proof at trial. *Celotex*, 477 U.S. at 323; *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996).

## III. Analysis

### A. The Applicable Law

The filing of a Chapter 7 bankruptcy petition creates a bankruptcy estate, comprised in part of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). The trustee in the bankruptcy case then becomes the representative of the bankruptcy estate, *see* 11 U.S.C. § 323(a), with the authority to "collect and reduce to money the property of the estate for which such trustee serves, and close such

7

estate as expeditiously as is compatible with the best interests of parties in interest[.]" 11 U.S.C. § 704(a)(1). Pursuant to 11 U.S.C. § 544(a), often referred to as the "strong-arm clause," *In re Biggs*, 377 F.3d 515, 517 (6th Cir. 2004), a trustee is allowed to "avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by . . . a bond fide purchaser of real property . . . from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists." 11 U.S.C. § 544(a). In other words, the trustee hypothetically purchases the debtor's property at the commencement of the bankruptcy case, then determines whether that property is subject to any valid prior interest. *Biggs*, 377 F.3d at 517. While the authority of the trustee is conferred by the bankruptcy code, the powers of the trustee are determined under the applicable state law. *See In re Muller*, 185 B.R. 552, 554 (Bankr. M.D. Tenn. 1995).

In Tennessee, deeds of trust are among the documents eligible for registration. *See* Tenn. Code Ann. § 66-24-101(a)(8). Tennessee recording statutes follow what has been referred to as a race-notice recording system, *Trustmark Nat'l Bank v. Deutsche Bank Nat'l Trust Co.*, No. W2009-01658-COA-R3-CV, 2010 WL 3269978, at *12 (Tenn. Ct. App. June, 16, 2010), and the Tennessee Supreme Court has articulated the five leading propositions embraced in those recording statutes:

> (1) That, as between the parties themselves and their heirs and representatives, such instruments take effect and are good without regard to registration; (2) that they also take effect and are equally good

8

> as to all persons who have actual notice of them from the date of such notice, except creditors; (3) that as to creditors (that is, of the vendor) they are inoperative, ineffective, and practically nonexistent until they are noted for registration on the books of the register; (4) that as to all other persons (that is, all not embraced in the preceding classes) they are equally inoperative, ineffective, and nonexistent until so noted for registration; (5) that upon being so "noted for registration" they become at once "notice to all the world," and so effective as to all the world.

*Id.* (quoting *Wilkins v. McCorkle*, 80 S.W. 834, 835 (Tenn. 1904) (discussing the recording statutes set forth in Shannon's Code)).

As stated by the Bankruptcy Court in the Memorandum supporting the Judgment, "[a]ll instruments registered pursuant to § 66-24-101 shall be notice to all the world from the time they are noted for registration, as prescribed in § 8-13-108; and shall take effect from such time." [Doc. 1-35, pp. 11-12 (quoting Tenn. Code Ann. § 66-26-102)]. The phrase "noted for registration" is described in § 8-13-108, which charges registers of deeds with the following duties:

(1)     Determine whether each instrument offered for registration is entitled to registration under the laws of the state;

(2)     If the instrument is accepted for registration, note on the instrument the time the instrument is actually received by the register;

(3)     Keep a notebook containing information regarding all instruments registered[.] The information contained in the notebook shall include the names of the grantors, grantees, the time of receipt (date, hour and minute) and the fees received. . . . The notebook shall be maintained in a well-bound book or computer storage media in accordance with § 10-7-121. The notebook information shall be maintained as a permanent record;

(4)     Enter into the appropriate notebook the required information listed above. The register shall endeavor to make entries into the notebook

9

in the order of time of reception as nearly as practicable, but entries shall be made without undue delay even if due to volume of instruments received the exact order of time or reception cannot be maintained. However, no instrument received on a certain day shall be entered into the notebook after instruments received on a later day;

(5)     Record or file the instrument in the appropriate book or record series;

6)     Certify the fact of registration upon every instrument registered, the time it was received, the book and page or other reference where it is recorded or filed, the amount of fees received (if any) . . . .

(7)     Carefully preserve as permanent records the recorded copies of all deeds, deeds of trust and other instruments affecting interests in real estate;

(8)     Exhibit the notebooks and instruments registered to all persons wishing to inspect them, during regular business hours;

(9)     Register, in the proper book of the register's office, the correction by the clerk of any error or omission in the clerk's certificate or probate or acknowledgment[.]

. . . .

[Doc. 1-35, pp. 13-14 (quoting Tenn. Code Ann. § 8-13-108)].   "All of the instruments mentioned in § 66-24-101 shall have effect between the parties to the same . . . without registration; but as to other persons, not having actual notice of [the instruments] only from the noting thereof for registration on the books of the register, unless otherwise expressly provided." *Id.* § 66-26-101, *see id.* §§ 66-24-101(a)(1), (4), (8).   In other words, fulfilling the requirements of § 8-13-108 is imperative because, although an instrument will continue to be effective between the parties thereto, *see id.* § 66-26-101, "[a]ny instruments not so registered, or noted for registration, shall be null and void as to existing or subsequent

10

creditors of, or bona fide purchasers from, the makers without notice." *Id.* § 66-26-103.

Thus, § 66-26-105 sets forth the priority of instruments as follows:

> Any instruments first registered or noted for registration shall have preference over one of earlier date, but noted for registration afterwards; unless it is proved in a court of equity, according to the rules of the court, that the party claiming under the subsequent instrument had full notice of the previous instrument.

*Id.* § 66-26-105.

Under Tennessee law, "[n]otice is generally said to take two forms, actual or constructive. Constructive notice is notice implied or imputed by operation of law and arises as a result of the legal act of recording an instrument under a statute by which recordation has the effect of constructive notice." *Blevins v. Johnson Cnty.*, 746 S.W.2d 678, 682 (Tenn. 1988).

> While "[i]t is true that recordation creates constructive notice as distinguished from actual notice, in that ordinarily actual notice is when one sees with his eyes that something is done," another kind of notice occupying what amounts to a middle ground between constructive notice and actual notice is recognized as inquiry notice. Some authorities classify inquiry notice as a type of constructive notice, but in Tennessee, it has come to be considered as a variant of actual notice." "The words 'actual notice' do not always mean in law what in metaphysical strictness they import; they more often mean knowledge of facts and circumstances sufficiently pertinent in character to enable reasonably cautious and prudent persons to investigate and ascertain as to the ultimate facts." Even a good faith failure to undertake the inquiry is no defense. Thus, "[w]hatever is sufficient to put a person upon inquiry, is notice of all the facts to which that inquiry will lead, when prosecuted with reasonable diligence and good faith."

*Id.* at 683 (internal citations omitted). Furthermore, the Tennessee Supreme Court has explicitly held that "[a] legally registered deed of trust places subsequent creditors and purchasers on constructive notice." *In re Marsh*, 12 S.W.3d 449, 454 (Tenn. 2000).

## B. The Judgment of the Bankruptcy Court

The Bankruptcy Court found that the DOT was accepted by the Register on March 11, 2009, assigned an instrument number, listed in the documents log, and registered under book and page numbers [Doc. 1-35, pp. 17-19]. The Bankruptcy Court found that these actions by the Register constituted registration of the DOT and afforded it notice under Tennessee law for the period of time in which the DOT was actually recorded on the Register's books [*Id.*]. However, that same day, the Register improperly voided the DOT,[2] *see* Tenn. Code Ann. § 67-4-409(b)(10)(A), and improperly replaced it with a subsequent, unrelated instrument at the identical book and page numbers [*Id.*, p. 19]. The Bankruptcy Court found that these actions by the Register voided the DOT, rendered it unregistered, and took it outside the recorded chain of title just as if it had never been recorded [*Id.*]. The Bankruptcy

---

[2]Bank of America and the Trustee do not dispute that the Register improperly removed the DOT from the property records and them improperly recorded the other instrument in its place. As noted by the Bankruptcy Court, once an instrument is accepted and recorded by a register of deeds, the "[n]onpayment or underpayment of tax on an indebtedness, or failure timely to pay tax on an increase in indebtedness, shall not affect or impair the effectiveness, validity, priority, or enforceability of the security interest or lien created or evidence by the instrument[.]" Tenn. Code Ann. § 67-4-409(b)(10)(A). Furthermore, according to a non-binding opinion of the Tennessee Attorney General, "a register of deeds is not entitled to remove an instrument that has been accepted and recorded by a deputy register of deeds, even if the register later determines that the deed was not entitled to registration." 2003 Tenn. AG LEXIS 74, at *4 (May 1, 2003) (stating that, however, the register is "authorized to record his or her determination that the instrument was not entitled to recording").

Court then summarized the definitions and parameters of "notice" in regard to registration of instruments under Tennessee law [*Id.*, p. 16], and found that the Register's voiding and removal of the DOT from the Register's books resulted in the DOT being neither constructive nor actual notice to the world at the time of the debtors' Chapter 7 petition. Thus, the Bankruptcy Court concluded, because the Trustee had no notice of the DOT, either by a search of the records or otherwise, the Trustee had priority as a bona fide purchaser and the authority to avoid Bank of America's lien [*Id.*].

## C.    The Parties' Positions

On appeal, Bank of America argues that McCurry's improper voiding of the DOT, and her registration of the different, subsequently filed instrument in its place, was unlawful, *ultra vires*, and void. Thus, Bank of America contends, although the Register's actions resulted in the DOT not appearing in the Trustee's search of the records at the time of the debtors' Chapter 7 petition, the Register's improper actions should have no effect on the recordation, validity, and enforceability of the DOT because it remained notice to all the world of Bank of America's lien, thus binding subsequent parties such as the Trustee. Bank of America submits that Tennessee case law confirms this position, that is, that a recorded instrument gives notice to all the world, despite an error by a filing official in the recording of the instrument, and even if that instrument would not be found from a search of the property records [Doc. 8, pp. 16-20 (citing and discussing *Philips v. Erwin*, 1 Tenn. 235 (D. Cir. Ct. Tenn. 1807); *Flowers v. Wilkes*, 31 Tenn. 408, 1852 WL 1772 (Tenn. 1852); *Swepson v. Exch. & Deposit Bank*, 77 Tenn. 713, 1882 WL 4091 (Tenn. 1882); *Hughes v.*

13

*Powers*, 99 Tenn. 480, 42 S.W.1 (Tenn. 1897); *Wilkins v. Reed*, 300 S.W. 588 (Tenn. 1927))]. Accordingly, Bank of America submits that the Bankruptcy Court was in error when it found otherwise.

In response, the Trustee contends that the Court should affirm the Judgment of the Bankruptcy Court because the critical issue is that on the date of the debtors' Chapter 7 petition, the DOT was not in the property records, was not registered, did not appear in the chain of title for the Property, and did not give actual or constructive notice to the Trustee of Bank of America's interest in the Property. The Trustee argues that whether the DOT was ever registered, or how it became unregistered, are of no consequence if the DOT was not registered and did not appear in the property records at the time the Chapter 7 petition was filed, therefore giving no notice of Bank of America's lien to the Trustee, a subsequent bona fide purchaser.

### D. Registration and Notice Under Tennessee Law

Bank of America argues that two principles flow throughout the case law construing Tennessee's recording statutes [Doc. 8, p. 17]. First, that an error of a register of deeds will not injure one who submits an instrument to the register of deeds and does everything the law requires of him, and second, that in such a situation, the instrument will be effective and notice to all the world even though, due to an error of the register, it may not appear from a search of the registered instruments in the property records [*Id.*].

The first case cited by Bank of America, *Philips v. Erwin*, rejects the defendant's assertion that a grant was invalid because it lacked an essential requisite, the countersignature

14

of the secretary of state. *Id.*, 1 Tenn. at 235. The *Philips* court found that the lack of the signature did not render the grant void, stating that the omission of the signature should not operate to the prejudice of the grantee and render the grant void. *Id.* The *Philips* court then stated, *arguendo*, that "[s]uppose a person takes a deed to a register . . . who returns it as registered, when in truth it was not. This neglect shall not injure the owner of the deed. In fact, it must be considered as registered from the time it is left with the register, the owner having performed all the law required of him." *Id.* There is no mention in the *Philip* court's analysis, nor in its description of the facts, that the party attempting to have the grant declared invalid lacked notice of the grant, or that the grant could not be found upon a search of the property records.

In *Flowers v. Wilkes*, the court considered a bill of sale that had been duly acknowledged, delivered to the register of deeds for registration, and immediately noted in the register's books. *Id.*, 1852 WL 1772, at * 1. However, the bill of sale was not registered in fact until approximately eight years later. *Id.* In the intervening period, a prior, unrecorded deed of gift that predated the bill of sale and involved the same property was registered in fact, followed later by the registration in fact of the bill of sale. *Id.* The plaintiff claimed that the deed of gift, the first to be registered in fact, had priority over the bill of sale, the second to be registered in fact, due to the order of registration. *Id.* at *2. The court disagreed, holding that, "[t]he party claiming under a deed, or other instrument, proved in proper form, and filed with the register, and noted by him in his book . . . will stand in the same attitude, as well in respect to creditors of the vendor as purchasers from him, as if such

15

deed or other instrument had been then actually spread upon the register's books." *Id.* The court's only discussion of notice was in regard to the bona fide purchaser's notice of the bill of sale, which the *Flowers* court observed had been done without notice of the prior deed of gift because the gift was accompanied by neither registration nor possession. *Id.* at *2. The court did not discuss notice in regard to whether the bill of sale appeared in a search of the property records.

*Swepson v. Exchange & Deposit Bank* considered an improperly recorded deed of trust that was "properly acknowledged and noted for registration, but . . . was recorded in the book for registration of chattel mortgages, etc., and not in the book of trust deeds or conveyances of real estate." *Id.*, 1882 WL 4091, at *5. Despite this error, the *Swepson* court held that because the applicable statute "directs the register to keep a book for the registration of trust deeds, etc. This section is directly to the register, and when a deed is noted and registered, it is notice to 'all the world,' from the time it is noted[.]" *Id.* Similar to *Flowers*, the *Swepson* court did not discuss whether the party challenging the validity of the deed lacked notice of the deed because it was recorded in the wrong book. There was also no discussion of whether a search of the property records would have revealed the deed.

*Hughes v. Powers* considered the entry of a notation for a deed of land intended for registration in a notebook maintained by a register. *Id.*, 42 S.W. at 1. Instead of the statutorily required description of the date of reception, grantor, grantees, and nature of the instrument, the notation contained "ditto marks" under the columns for date of reception, grantors, and grantees, with the only written description of the instrument being that of a

16

"warranty deed" under the column describing the nature of the instrument. *Id.* at *1-*2. It was argued by the plaintiffs that the ditto marks were "without intelligible meaning" and should be ignored, thus rendering the notation essentially blank, save for the column indicating the nature of the instrument, and therefore void. *Id.* The defendant offered the *Hughes* court a different interpretation of the ditto marks, submitting that the marks should be read as a repetition of what appeared on the line above the marks, thus making the notation a repetition of the terms in the preceding notation and rendering it a complete, valid notation with all the required entries. *Id.*

The *Hughes* court agreed with the defendant, finding that the ditto marks "should be read as a repetition or reproduction of the words and figures in the line above them[,]" and that, given this, the "notation is sufficient, and gave the deed effect against the creditors of the vendor from the date of noting, though the deed was not in fact registered until after the complainants filed their bill." *Id.* at *2. The *Hughes* court noted that the actual deed was not registered in fact until after the plaintiffs filed their objection to the notation containing the ditto marks, but that the notation was "sufficient, and gave the deed effect against creditors of the vendor from the date of noting." *Id.* at 2. Similar to *Philips*, *Flowers*, and *Swepson*, the *Hughes* court did not discuss whether the unregistered deed represented by the notation, ditto marks or otherwise, gave the plaintiffs notice of the deed upon a search of the property records.

Finally, in *Wilkins v. Reed*, the defendant took, as security for a loan, a deed of trust that was properly executed, acknowledged, and contained the correct description of the

17

property. *Id.*, 300 S.W. at 588. The plaintiff objected to the deed of trust because the register had inadvertently omitted the signature of the notary public. *Id.* In its analysis of this defect, the *Wilkins* court discussed two types of defects, the first, a defect that "went to the issue of notice of the transfer in some form or degree, and the second, a defect that "involv[es]the authority to record, such as the omission, in fact, of the officer's signature to his certificate." *Id.* In regard to this first type of defect, the *Wilkins* court discussed a case from Pennsylvania in which the instrument was recorded under the wrong name, resulting in "no notice of the [instrument], either actual or constructive" to the purchaser who bought the property after a search of the records. *Id.* (citing and discussing *Prouty v. Marshall*, 225 Pa. 570 (Pa. 1909)).[3] The *Wilkins* court emphasized that throughout *Prouty* was language "emphasizing the essentiality of the element of notice–that the record, including the required index, shall be in such shape that examination thereof will supply notice to the searcher of the previous transfer of the identical property[,]" and that several cases from Tennessee, considering facts involving defects in the deeds' descriptions of properties, reached similar conclusions. *Id.* at 588-89 (citing cases). The *Wilkins* court found "[t]hese holdings are consistent with the principle doctrine of notice. Unless the description is adequate and correct, obviously this vital element of notice is wanting on the face of the record." *Id.* at 589.

---

[3]In *Prouty*, the mortgage was both defectively recorded and wrongly indexed, and the applicable state statutes provided that the entry of mortgages in an index would be notice to all persons of the recording of the same. *Id.*, 225 Pa. at 574. The court concluded that the defective recording and indexing afforded no notice of the mortgage to the purchaser of the land and that these defects were fatal to the claim of the mortgagee that the purchaser was on notice of the mortgage. *Id.* at 574-75.

The *Wilkins* court then considered the second type of defect, the defect at issue in *Wilkins*, that is, the lack of an acknowledgment signature on a deed. *Id.* at 589. The court observed that this defect "does not affect the element of notice to an interested party of the essential fact of a previous transfer of property[,]" and concluded that when an instrument has been properly executed and acknowledged, it is entitled to registration and a defective recording of the certificate does not render that instrument null and void. *Id.* The *Wilkins* court found, under the facts of that case, that the lack of the signature would not render the deed invalid and that "[t]his rule should certainly be applied whenever the neglect or omission of the register in no way affects the notice carried by the correct registration of the instrument itself but relates alone to the authority for its registration." *Id.*

After a review of these cases, the Court disagrees with Bank of America that the cases stand for the proposition that under Tennessee law, an instrument once recorded gives notice to all the world, despite an error by the register, and even if that instrument would not be found from a search of the property records. Except for the discussion in *Wilkins* regarding notice, there is no mention in these cases of the validity and priority of an instrument if a subsequent, bona fide purchaser's investigation of the property records did not reveal the instrument. In *Swepson* and *Hughes*, the instruments were in the respective register of deeds offices and were properly noted for registration but were either not registered in fact with a technically insufficient notation, or were registered in the wrong books. In *Flowers*, the bill of sale was filed, acknowledged, and noted by the register, but was not registered in fact and "actually spread upon the register's books" until eight years later. In *Philips*, there was no

19

discussion of notice because the only issue actually addressed in that opinion pertained to whether the lack of a required signature rendered the deed void. In *Wilkins*, the court discussed two potential defects, one of which—a lack of a required signature—would not render a deed void, while the other—a defect pertaining to the element of notice, such as an improper description in a deed of the covered property—could void a deed.

In sum, the Court does not find these cases to show that the Bankruptcy Court's conclusion was in error under the applicable Tennessee law. Finally, the Court agrees with the Bankruptcy Court that the facts of this case are more akin to the misfiling of a document which prevents a subsequent purchaser from having notice of a property interest, rather than a technical clerical error that has no effect on notice. *See, e.g., Holiday Hospitality Franchising, Inc. v. States Resources, Inc.*, 232 S.W.3d 41, 54 (Tenn. Ct. App. Dec. 14, 2006) (finding that a mistakenly released deed would not be reinstated and could not therefore attain a priority position if the subsequent bona fide purchaser could assert a lack of notice). Here, the Bankruptcy Court found that the unregistered interest represented by the improperly voided DOT would not be given priority over a subsequent bona fide purchaser—the Trustee—who asserted a lack of notice

In this case, there is no dispute that "the [DOT] was not a matter of public record in the [Register] when the Debtors filed [the Chapter 7 petition] on June 17, 2009, [the DOT] having been voided and removed by . . . McCurry on March 11, 2009." [Doc. 1-35, p. 17]. There is no dispute that the Trustee searched the Register's property records, but that his search did not put the Trustee on notice, either actual or constructive, of the DOT and Bank

of America's interest in the Property. Furthermore, there is no argument that the Trustee should have done more to search the Register's records, that he was on notice—either actual, inquiry, or constructive—due to the listing of the DOT's instrument number and return address designation in the documents log, or that the listing of an instrument in a documents log, alone, suffices for purposes of notice under the recording statutes.

This is not a case where it is argued that a notation of registration or a "spreading on the books" was sufficient, despite a technical defect. Rather, the Court agrees with the Bankruptcy Court that this is a case where the issue is one of the notice of the Trustee at the time of the Chapter 7 petition. While Bank of America argues that the one time registration of the DOT, irrespective of the improper voiding of that instrument, left the notice afforded by the briefly-registered DOT in effect to all the world, Bank of America has cited no case considering similar facts and stating such a proposition. Rather, neither *Philips*, *Flowers*, *Swepson*, or *Hughes* discussed or addressed whether the subsequent bona fide purchaser in each case was on notice of the unregistered or erroneously registered deeds at issue in those cases. Finally, in *Wilkins*, where the issue of notice was discussed, the *Wilkins* court stated that a defect in a deed pertaining to notice could render a deed void.

Accordingly, the Court finds, contrary to Bank of America's assertion, that the cases cited in its brief do not stand for the proposition that the one-time act of registration, if an instrument is subsequently unregistered, affords a party a priority position when it is undisputed that a subsequent bona fide purchaser had no notice of the unregistered instrument after a search of the applicable property records.

**IV. Conclusion**

For the reasons stated herein, the Court **AFFIRMS** the Judgment of the Bankruptcy Court [Doc. 1-35; Doc. 1-36] in its entirety. Accordingly, Bank of America's appeals will be **DISMISSED**. An appropriate order will be entered.

ORDER ACCORDINGLY.


s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE